# United States Bankruptcy Court
## Middle District of Florida

In re **John P. McMahan, Sr d/b/a MAC's Tree and Hauling Service**
Debtor(s)

Case No. **3:10-bk-05478**
Chapter **11**

# DEBTOR'S DISCLOSURE STATEMENT, DATED OCTOBER 13, 2010

## I. INTRODUCTION

This is the disclosure statement (the "Disclosure Statement") in the chapter 11 case of **John P. McMahan, Sr** (the "Debtor"). This Disclosure Statement contains information about the Debtor and describes the **Plan of Reorganization** (the "Plan") filed by **John P. McMahan, Sr.**. A full copy of the Plan is attached to this Disclosure Statement as Exhibit A. *Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.*

The proposed distributions under the Plan are discussed in this Disclosure Statement. [General unsecured creditors are classified in Class 9 and will receive a distribution of approximately 7% of their allowed claims, to be distributed pro rata over 60 months.]

### A. Purpose of This Document

This Disclosure Statement describes:

1. The Debtor and significant events during the bankruptcy case,
2. How the Plan proposes to treat claims or equity interests of the type you hold (i.e., what you will receive on your claim or equity interest if the plan is confirmed),
3. Who can vote on or object to the Plan,
4. What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,
5. Why the Debtor believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and
6. The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

### B. Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

1. *Time and Place of the Hearing to [Finally Approve This Disclosure Statement and] Confirm the Plan*

The hearing at which the Court will determine whether to confirm the Plan will be held before a United States Bankruptcy Judge on the Fourth Floor at the United States Courthouse, 300 North Hogan Street, Jacksonville, Florida 32202 By separate notice, you will receive a time and date of the hearing to confirm the Plan.

2. *Deadline For Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to the United States Bankruptcy Court, 300 North Hogan Street, 3rd Floor, Jacksonville, Florida 32202. See below for a discussion of voting eligibility requirements.

      3.    *Deadline For Objecting to the Confirmation of the Plan*

Objections to the confirmation of the Plan must be filed with the Court and served upon all interested parties by the date states on the enclosed order.

      4.    *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact Jason A. Burgess, 2350 Park Street, Jacksonville, Florida 32204.

## II. BACKGROUND

### A. Description and History of the Debtor's Business

The Chapter 11 case has been filed to deal with certain secured business debts and unsecured debt, mainly medical bills. The Debtor's business was very productive and operating for over 30 years before he suffered a medical setback. Because of the medical emergency his business declined while he dealt with his medical problems. By the time his health was back he was already too far behind in his debt not to mention the new medical debt that was pilling up. A schedule of assets owned by the Debtor is attached to this Disclosure Statement as Exhibit B.

### B. Insiders of the Debtor

N/A

### C. Management of the Debtor Before and During the Bankruptcy

N/A

### D. Events Leading to Chapter 11 Filing

See II (A) above.

### E. Significant Events During the Bankruptcy Case

The Debtor anticipates it will approve Jason A. Burgess his general counsel for this bankruptcy case. Additionally, the Debtor's business is back to its pre-medical emergency numbers. Since the Debtor's health is better he does not anticipate any problems making the newly structured payments.

### F. Projected Recovery of Avoidable Transfers

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions.

### G. Claims Objections

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article V of the Plan.

### H. Current and Historical Financial Conditions

N/A

## III. SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A. What is the Purpose of the Plan of Reorganization?

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

B.    **Unclassified Claims**

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponent has not placed the following claims in any class:

1.    *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

| **Type** | **Estimated Amount Owed** | **Proposed Treatment** |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | N/A | Paid in full on the effective date of the Plan, or according to terms of obligation if later |
| The Value of Goods Received in the Ordinary Course of Business Within 20 Days Before the Petition Date | N/A | Paid in full on the effective date of the Plan, or according to terms of obligation if later |
| Professional Fees, (Attorney's Fees) as approved by the Court. | Amount Owed: $5,000.00 | Paid in full on the effective date of the Plan, or according to separate written agreement, or according to court order if such fees have not been approved by the Court on the effective date of the Plan |
| Clerk's Office Fees | Amount Owed: $0.00 | Paid in full on the effective date of the Plan |
| Other administrative expenses | N/A | Paid in full on the effective date of the Plan or according to separate written agreement |
| Office of the U.S. Trustee Fees | $1,000.00 | Paid in full on the effective date of the Plan |
| TOTAL | $6,000.00 | |

2.    *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief. However, the Debtor does not anticipate any governmental entity will file a claim.

C.    **Classes of Claims and Equity Interests**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

1.    *Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

| **Class #** | **Description** | **Insider? (Yes or No)** | **Impairment** | **Treatment** |
|---|---|---|---|---|
| | | | | |

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 2 | *Secure claim of:* Name = *First Mortgage Claim of OneWest Bank (Claim 4)* <br><br> Collateral Description = 4476 CR 218 West, Middleburg, Florida 32068 | **No** | Impaired | Class 2 is impaired by this Plan. This Plan will continue to make regular monthly payments to the lender on the original terms of the note and mortgage and will cure all arrears in equal monthly payments over 60 months. |
| 3 | *Secure claim of:* Name = *PMSI Claim of* Caterpillar Financial Services (Claim 11) <br><br> Collateral Description = 1999 International Truck with Prentice Mount Loader and Grapple | **No** | Impaired | Class 3 is impaired by this Plan. This Plan values the holder's interest in the collateral at $15,935.00. <br><br> The holder of the Class 3 claim will receive distributions equal to $15,935.00 on a monthly basis over 5 years plus interest accruing 5.25% annually. |
| 4 | *Secure claim of:* Name = *PMSI Claim of Colonial Pacific Leasing Corporation (Claim 9)* <br><br> *Collateral Description* = Bobcat Compact Track Loaders T190F, SN 531618547; Deluxe Panel, 66" Grapple Keyign; and a Bobcat Grapple | **No** | Impaired | Class 4 is impaired by this Plan. This Plan values the holder's interest in collateral at $9,000.00. <br><br> The holder of the Class 4 claim will receive distributions equal to $9,000.00 on a monthly basis over 5 years plus interest accruing 5.25% annually. |
| 5 | *Secure claim of:* Name = *PMSI Claim of Colonial Pacific Leasing Corporation (Claim 10)* <br><br> *Collateral Description* = Bobcat Compact Track Loaders T190, SN: 531613332 and Bobcat Grapple 66" Ind Bucket, SN: 477010423. | **No** | Impaired | Class 5 is impaired by this Plan. This Plan values the holder's interest in the collateral at $6,500.00. <br><br> The holder of the Class 5 claim will receive distributions equal to $6,500.00 on a monthly basis over 5 years plus interest accruing 5.25% annually. |

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 6 | *Secure claim of:*<br>*Name = PMSI of Harris P.A.*<br><br>*Collateral Description = 2008 Buick Lacrosse* | No | Impaired | Class 6 is impaired by this Plan. This Plan values the holder's interest in collateral at $13,500.00.<br><br>The holder of the Class 6 claim will receive distributions equal to $13,500.00 on a monthly basis over 5 years plus interest accruing 5.25% annually. |
| 7 | *Secure claim of:*<br>*Name = PMSI of Suntrust Bank (Claim 5)*<br><br>*Collateral Description = 2007 Chevrolet Silverado 2500HD (VIN: 1GCHK23097F176124)* | No | Impaired | Class 7 is impaired by this Plan. This Plan will pay the full claim amount of $21,310.95.<br><br>The holder of the Class 7 claim will receive distributions equal to $21,310.95 on a monthly basis over 5 years plus interest accruing 5.25% annually. |
| 8 | *Secure claim of:*<br>*Name = PMSI of Suntrust Bank (Claim 7)*<br><br>*Collateral Description = 2007 Chevrolet Silverado 2500HD (VIN: 1GCHK23D57F160146)* | No | Impaired | Class 8 is impaired by this Plan. This Plan will pay the full claim amount of $20,316.80.<br><br>The holder of the Class 8 claim will receive distributions equal to $20,316.80 on a monthly basis over 5 years plus interest accruing 5.25% annually. |

2. *Classes of Priority Unsecured Claims*

Certain priority claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim. However, a class of holders of such claims may vote to accept different treatment. The Debtor does not anticipate any Priority Unsecured Claims.

3. *Class[es] of General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code. The Plan proposed to pay on a pro rata basis its liquidation value to its unsecured creditors on a pro rata basis or the Debtor's disposable monthly income, whichever is higher. A copy of the liquidation analysis is attached to this disclosure statement as exhibit C.

4. *Class[es] of Equity Interest Holders*

Equity interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are equity interest holders. In a partnership, equity interest holders include both general and limited partners. In a limited liability company ("LLC"), the equity interest holders are the members. Finally, with respect to an individual who is a debtor, the Debtor is the equity interest holder.

The following chart sets forth the Plan's proposed treatment of the class[es] of equity interest holders:

N/A

**D.    Means of Implementing the Plan**

1. *Source of Payments*

Income from operation of the tree business.

2. *Post-confirmation Management*

N/A

**E.    Risk Factors**

N/A

**F.    Executory Contracts and Unexpired Leases**

Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any. If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in Exhibit 5.1 will be rejected under the Plan. Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

**G.    Tax Consequences of Plan**

***Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.***

The following are the anticipated tax consequences of the Plan:

N/A – The Debtor is not anticipating any tax consequences from the plan due to the filing under the Code.

**IV.    CONFIRMATION REQUIREMENTS AND PROCEDURES**

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in § 1129, and they are not the only requirements for confirmation.

### A. Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that classes are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan.

1. *What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

2. *What Is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

3. *Who is **Not** Entitled to Vote*

The holders of the following five types of claims and equity interests are *not* entitled to vote:

   a. holders of claims and equity interests that have been disallowed by an order of the Court;

   b. holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.

   c. holders of claims or equity interests in unimpaired classes;

   d. holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and

   e. holders of claims or equity interests in classes that do not receive or retain any value under the Plan;

   f. administrative expenses.

*Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan.*

4. *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

### B. Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section B.2.

1. *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

2. *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code.  A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan.  The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

C. **Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation.  A liquidation analysis is attached to this Disclosure Statement as Exhibit C.

D. **Feasibility**

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

1. *Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date.

2. *Ability to Make Future Plan Payments And Operate Without Further Reorganization*

At the confirmation hearing, the Debtor must also show that it will have enough case over the life of the Plan to make the required Plan payments.

V. **EFFECT OF CONFIRMATION OF PLAN**

A. **DISCHARGE OF DEBTOR**

Confirmation of the Plan does not discharge any debt provided for in the Plan until the court grants a discharge on completion of all payments under the Plan, or as otherwise provided in § 1141(d)(5) of the Code.  Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

B. **Modification of Plan**

The Plan Proponent may modify the Plan at any time before confirmation of the Plan.  However, the Court may require a new disclosure statement and/or revoting on the Plan.  The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing.

Upon request of the Debtor, the United States trustee, or the holder of an allowed unsecured claim, the Plan may be modified at any time after confirmation of the Plan but before completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan.

C. **Final Decree**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

VI. **OTHER PROVISIONS**

N/A

Dated October 12, 2010

/s/ Jason A. Burgess
**Jason A. Burgess**
Florida Bar No. 40757
Attorney for Debtor in Possession
2350 Park Street
Jacksonville, Florida 32204
(904) 521-9868
jason@jasonaburgess.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was furnished to Office of the United States Trustee, 135 W. Central Blvd., Ste. 620, Orlando, Florida 32801 and to all interested parties as listed on the court's matrix, by CM/ECF filing this 13th day of October 2010.

/s/ Jason A. Burgess
**Jason A. Burgess**
Florida Bar No. 40757
Attorney for Debtor in Possession
2350 Park Street
Jacksonville, Florida 32204
(904) 521-9868
jason@jasonaburgess.com

## EXHIBITS

**Exhibit A**  Copy of Proposed Plan of Reorganization
**Exhibit B**  Identity and Value of Material Assets of Debtor
**Exhibit C**  Liquidation Analysis
**Exhibit D**  Debtor's Most Recently Filed Operating Report